UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANDREW L. LIPSEY,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
      _____/

Case No. 1:15-CV-0821

HON. ROBERT J. JONKER

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Andrew Lipsey seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was forty-five years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.105, 134.) He completed the eleventh grade, and was previously employed as a restaurant cook. (PageID.136, 159.) Plaintiff applied for benefits on July 31, 2012, alleging that he had been disabled since July 18, 2012, due to a heart attack. (PageID.178, 193, 275–290.) Plaintiff's applications were denied on February 4, 2013, after which time he requested a hearing before an ALJ. (PageID.211–218, 222–227.) On November 20, 2013, Plaintiff appeared with his counsel before ALJ Carol Guyton for an administrative hearing with testimony being offered by

Plaintiff and a vocational expert (VE). (PageID.127–173.) In a written decision dated February 10, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.105–126.) On June 17, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.28–34.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Guyton determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.110.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) coronary artery disease; (2) history of non-ischemic cardiomyopathy and chronic heart failure; (3) essential hypertension; (4) diabetes mellitus; (5) obesity; and (6) affective disorders and anxiety disorder. (PageID.110.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.111–113.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: lifting 10 pounds occasionally and less than 10 pounds frequently; standing and walking 2 hours and sitting 6 hours in an eight hour workday; occasional posturals; never climbing ladders, ropes or scaffolds; no overhead reaching; he should avoid concentrated exposure to extreme heat, cold, humidity, fumes, odors, dust, gases, and poor ventilation; he should avoid even moderate exposure to hazardous machinery and unprotected heights; he is limited to simple routine tasks involving no more than simple, short instructions and simple work related decisions with few work place changes.

(PageID.113.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.120.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE identified the following

4

positions that Plaintiff could perform: packager (2,600 regional jobs[2] and 42,000 national jobs), assembler (2,700 regional jobs and 55,000 national jobs), and office helper (3,000 regional jobs and 140,000 national jobs). (PageID.162–163.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.121.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from his alleged disability onset date through the date of decision. (PageID.121.)

## DISCUSSION

### 1.   The ALJ Properly Evaluated Dr. Perry's Opinion.

On December 5, 2013, Dr. Benjamin Perry filled out a two-page worksheet that asked his opinion regarding Plaintiff's physical condition. (PageID.737–738.) Among other things, Dr. Perry opined that Plaintiff could only stand or walk for less than two hours in a workday, and he could only sit for about four hours in the workday. Plaintiff would also need to shift positions at will. (PageID.737.) Furthermore, Plaintiff would need to elevate his legs for a quarter of the workday due to chronic edema in his lower extremities and activity related shortness of breath. (PageID.737.) Plaintiff could occasionally twist and stoop, rarely crouch and climb stairs, and never climb ladders. (PageID.738.) Dr. Perry also provided a statement to Plaintiff's attorney. In it, he stated that Plaintiff would need to elevate his legs because of abnormal pump function, obesity, high blood pressure and diabetes. (PageID.739.) He also opined that Plaintiff would need to use the restroom more frequently than the general population. (PageID.740.) Plaintiff claims Dr. Perry's

---

[2] At the administrative hearing, the VE defined regional jobs as those jobs existing in the lower peninsula of the state of Michigan. (PageID.161.)

5

opinion was entitled to controlling weight, and that the ALJ erred in assigning only partial weight to the opinion. (PageID.118–19.)

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov.7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating

physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

Plaintiff's claim is premised on the assumption that Dr. Perry qualifies as a treating source. While Plaintiff asserts that Dr. Perry does qualify, the ALJ and the Commissioner argue otherwise. The ALJ noted that Plaintiff described Dr. Perry as his treating cardiologist, but disagreed with that characterization by noting that Plaintiff had only treated with Dr. Perry once after his onset date, and that the doctor's opinion came more than a year after he had last treated with Plaintiff. (PageID.119.) Both these observations are supported by substantial evidence. Plaintiff was admitted to Borgess Medical Center from July 18, 2012, through July 24, 2012, after complaining of chest pain. (PageID.424.) During this time he was treated by Dr. Perry. (PageID.427.) Upon discharge, he was instructed to follow up with Dr. Perry. (PageID.425.) On August 8, 2012, he was seen by Dr. Perry, who referred him to Dr. Ken Liu to consider implanting an AICD.[3] (PageID.466.) On other occasions Plaintiff would visit with Borgess Health Center, Dr. Perry's clinic, but those visits were with nurse practitioners, and Plaintiff does not appear to have been examined again by Dr. Perry. (PageID.639–643.) Accordingly, when Dr. Perry provided his December 5, 2013, opinion, more than a year had passed since he had last examined Plaintiff. With that in mind, the ALJ

---

[3] AICDs "detect and stop abnormal heartbeats (arrhythmias). The device continuously monitors [a patient's] heartbeat and delivers electrical pulses to restore a normal heart rhythm when necessary." *Implantable Cardioverter-Defibrillators (ICDs)*, MAYO CLINIC, http://www.mayoclinic.org/tests-procedures/implantable-cardioverter-defibrillators/home/ovc-20206053 (last visited Aug. 9, 2016).

correctly determined that Dr. Perry does not qualify as a treating source. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011) (finding that a physician who had last examined the claimant more than a year earlier was no longer a treating source); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) ("Indeed, depending on the circumstances and nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship.")

As a non-treating, examining source the "good reasons" requirement did not apply to Dr. Perry. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). But the ALJ was still required to evaluate the opinion under the factors articulated in the regulations, including: (1) the length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. 20 C.F.R. §§ 404.1527, 416.927. While the ALJ was not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007). A review of the ALJ's discussion demonstrates that the ALJ was well aware of her obligation, and explicitly discussed several of the factors, including the doctor's specialization as a cardiologist, the nature, extent, and frequency of the examining relationship, as well as the supportability and consistency of the relationship.

The Court finds the ALJ's discussion here to be more than sufficient and supported by substantial evidence. On several occasions Plaintiff presented with trace, scant, or even no edema. (PageID.642, 691, 693, 696.) When Plaintiff was first seen by Dr. Perry, his ejection

8

fraction was between ten and twenty percent. (PageID.420.)  By July 2013, after insertion of the AICD, Plaintiff's ejection fraction was forty-five percent and he had a normal stress EKG, although the stress test was described as abnormal. (PageID.642.)  After a heart catheterization in August 2013, Plaintiff was described as having nonobstructive mild coronary artery disease without any significant obstructive disease.  He had an ejection fraction of forty percent.  Plaintiff also had mild pulmonary arterial hypertension, mildly elevated cardiac filling pressure, and well preserved cardiac output.  (PageID.713–714.)  On his function report, Plaintiff testified he was able to feed his dog and take it outside. He had no problems with his personal care, could prepare meals, do a little cleaning, drive a car, go shopping, and walk two blocks.  (PageID.336.)  Though Plaintiff may have testified he was further limited at the hearing, it was the ALJ's role to resolve inconsistencies.  At bottom, the record does establish that Plaintiff is limited by his conditions, however such limitations are adequately accounted for by his RFC.  Accordingly, the ALJ did not err in giving only partial weight to Dr. Perry's opinion.

Finally, the ALJ properly relied on the state agency physician's findings (those of Dr. Mohiuddin, M.D.) rather than the findings of Dr. Perry, contrary to Plaintiff's assertions.  Plaintiff claims that the ALJ could not rely on Dr. Mohiuddin's opinion because the doctor did his evaluation in February of 2013, and therefore did not consider, among other things, the opinion of Mr. Vihangi Singh. (PageID.775.) Mr. Singh provided his information in November of 2013. (PageID.719–724.) In the first place, as a therapist Mr. Singh is non-acceptable source for medical opinions.  *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (defining "other sources" as including nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists). Moreover, given the delay inherent in the administrative review process, few, if any cases, will present a static medical

record from a date before the decision on initial review through the date of the ALJ's decision. Here the ALJ understood that and weighted the evidence accordingly. The ALJ knew that Dr. Mohiuddin rendered an opinion on the basis of the medical record as it existed in February 2013, (Tr. 117), and accounted for it. "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal quotations omitted). Here the ALJ gave such an indication by, among other things, considering the November 2013, opinion of Mr. Singh directly and discounting it for multiple reasons supported by substantial evidence. (PageID.118.)

The ALJ was free to consider Dr. Mohiuddin's opinions and determine what weight, if any, they should be given. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Brooks* 531 F. App'x at 642 ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). The ALJ found Dr. Mohiuddin's opinion was supported by the record while Dr. Perry's opinion was not. The Court finds no error here.

For all the above reasons, Plaintiff's claim of error is rejected.

**2.      Substantial Evidence Supports the ALJ's RFC Determination.**

Plaintiff next makes a number of claims regarding the ALJ's RFC discussion, none of which the Court finds persuasive. RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *see Kornecky*, 167 F. App'x 496, 499 (6th Cir. 2006). RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Deaton v. Comm'r of Soc. Sec.*, 315 F. App'x 595, 598 (6th Cir. 2009). "In formulating a residual functional capacity, the ALJ evaluates all the relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, No. 10–3820, 2012 WL 616661, at * 2 (6th Cir. Feb. 27, 2012). For reasons explained below, the ALJ's factual finding that Plaintiff retained the RFC to perform a limited range of light work is supported by substantial evidence.

*A.      Obesity*

Plaintiff first argues that because the ALJ failed to properly evaluate and consider his obesity, his RFC determination is not supported by substantial evidence. (PageID.776.) The Court disagrees.

While obesity is no longer considered a "listed impairment" by the Social Security Administration, the effect of obesity on a claimant's ability to work must be specifically considered. *See, e.g.*, SSR 02–1P, 2002 WL 34686281 (S.S.A. Sept. 12, 2002); *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) ("an ALJ must 'consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation'") (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009)).

The ALJ is not obligated to employ any "particular mode of analysis" when assessing

the impact of a claimant's obesity. *See Shilo*, 600 F. App'x at 959. Nevertheless, the ALJ must do more than merely "mention the fact of obesity in passing." *Id.* As the Sixth Circuit recently reiterated:

> Obesity . . . must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity,' precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'

*Id.* (quoting SSR 02–1P, 2002 WL 34686281 at *1–2).

The rationale for specifically considering the effect of obesity on a claimant's ability to function and perform work activities is straightforward:

> Obesity 'commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems.' For example, 'someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.' The ALJ also must specifically take into account 'the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment,' and consider how 'fatigue may affect the individual's physical and mental ability to sustain work activity'-especially in 'cases involving sleep apnea.'

*Id.* (quoting SSR 02–1P, 2002 WL 34686281 at *3–6).

But SSR 02–1p cautions that the Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The Commissioner] will evaluate each case based on the information in the case record." SSR 02–1p, 2002 WL 3468281 at *6. In other words, the ruling does nothing to relieve Plaintiff of the burden of marshaling competent medical opinions and evidence to show specifically how his obesity exacerbated his other impairments, or interacted with them, to render

him incapable of all suitable work.

Plaintiff had the burden of showing specifically how his obesity, in combination with other impairments, limited his ability to a degree inconsistent with the ALJ's RFC determination. The ALJ discussed Plaintiff's obesity and steps two, three and four, and concluded her obesity discussion by noting that the RFC for a limited range of sedentary work "would fully accommodate claimant's morbid obesity." (PageID.115.) Plaintiff's argument here is basically a rehash of his above argument regarding Dr. Perry–namely that the ALJ should have adopted Dr. Perry's opinion to prohibit him from climbing stairs and requiring him to elevate his legs while seated. (PageID.776.) The Court has already found the ALJ's discussion discounting the doctor's opinion to be supported by substantial evidence. Accordingly, Plaintiff's argument here is rejected.

### B. Medication Side Effects

In a short, three sentence paragraph, Plaintiff argues the RFC is without substantial evidence because the ALJ failed to address the side effects from Plaintiff's medications. Plaintiff appears to claim that the ALJ should have accounted for Dr. Perry's opinion that Plaintiff would need additional restroom breaks during the workday due to his prescribed diuretics, and Plaintiff's testimony that his medication made him drowsy. (PageID.776.)

In evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which those symptoms limit a claimant's capacity for work, the Commissioner considers various factors, including "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." 20 C.F.R. §§ 404.1529(c), 416.929(c). Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004)

(where the plaintiff testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians). Here, the ALJ considered Plaintiff's reports of side effects, noting that Plaintiff complained of being tired, and referencing Plaintiff's statement that "he needed to use the restroom three times an hour." (PageID.114.) Plaintiff's brief does not point to medical records which demonstrate that he addressed these alleged, disabling side effects with his physicians, nor can the Court find any such complaints in the record. To the extent Plaintiff relies on Dr. Perry's opinion, the Court notes that Dr. Perry appears to have only speculated that Plaintiff would have to use the restroom "more frequently than the general population" but did not provide any specific frequency nor tie this to Plaintiff's medications. (PageID.739–740.) Accordingly, this argument is rejected.

### 3. The ALJ Properly Evaluated Plaintiff's Credibility.

At the administrative hearing, Plaintiff testified that he could not work because of the need to elevate his legs, medications causing drowsiness, and frequent need to use the restroom. (PageID.138.) He further stated he experienced nagging pain all day long in his joints, rating his pain at a nine on a scale of zero through ten. (PageID.140–141.) He also testified that he could not work due to major anxiety and depression. (PageID.142.) The ALJ found Plaintiff's subjective statements were "not entirely credible." (PageID.114.) Plaintiff claims the ALJ erred in discounting his complaints.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social

Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's

15

subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

In her decision denying Plaintiff's claim for benefits, the ALJ articulated the following rationale for discrediting Plaintiff's credibility:

> Although claimant testified he needed to have his legs elevated 30-40% of the day, the records indicate that his edema is very mild. In January 2013, his edema was referred to as "trace" (Exhibit 13F). In February 2013, it was referred to as "scant" (Exhibit 21F at 14). In July 2013, he had no edema on exam (exhibit 21F at 10). In November 2013, his edema was referred to as trace (Exhibit 25F at 3). Moreover, arterial and venus duplex testing were normal (Exhibits 20F and 26F at 1). Additionally, although the claimant testified he had to urinate frequently, the records contain no complaints of frequent urination. Although he testified his legs and arms were numb, and he had nagging pain all day, he also testified he required no pain medications and the records are devoid of any objective findings of decreased sensation that would explain his alleged numbness. Although he alleged having trouble getting along with others, he reported in his Function Report that he had no trouble getting along (Exhibit 1E). Furthermore, although he testified he performed no chores, he reported in his Function Report that he did some cleaning (Exhibit 1E). Moreover, he testified he had anxiety attacks three times per week; however, he did not report this to his providers and his treating providers frequently noted a normal mental status exam with a euthymic mood (Exhibits 11F at 4, and 21F at 1, 12, 10, and 3-4). Consequently, after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(PageID.114.)

The ALJ's characterization of the evidence is accurate and her conclusions are consistent with the record as a whole. In sum, the ALJ's determination to discount Plaintiff's credibility is supported by substantial evidence. This argument is, therefore, rejected.

## **CONCLUSION**

For the reasons discussed, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated: August 12, 2016 /s/ Robert J. Jonker
ROBERT J. JONKER
Chief United States District Judge